The case this morning is No. 2011-1223, NOVO NORDISK v. CARACO PHARMA. Mr. Parrish. Judge Newman, may I please the court? The district court erroneously invalidated the 358 patent, which claims a method of treating type 2 diabetes using a novel and unprecedented combination of two drugs that exhibited surprising and unexpected results, as the examiner expressly found in allowing the patent. But isn't the question whether it would have been obvious to see whether there were, let's say, unexpected results, synergism between these two components? Your Honor, the prior art taught only the combination of metformin, one of the two drugs, with another class of compounds, the sulfonylureas. No prior art taught the combination with repaglinide. The examiner and the district court analyzed this under the two-step obvious-to-try framework. And we don't argue here that a skilled artisan would not have been motivated to try the combination. What there is no evidence of here, no evidence whatsoever, is that the magnitude of results actually achieved would have been expected by a skilled artisan, and that is the burden that CARACO carried at trial, had to carry at trial. I'm confused about that, because it seems to me that you agree that the comparison is between the repaglinide-metformin combination, your claimed invention, with the prior art combination of the sulfonamides and the metformin, correct? That's correct, Your Honor. But in so far as I can tell, the only evidence in the record comparing the results of those two combinations shows that the repaglinide-metformin combination is not as effective as the earlier combination. Your Honor, that's incorrect, and let me explain why. First, the evidence in the record showed, the evidence of the prior art before the critical date showed, that repaglinide, standing alone, this is the Wolfenbutel article. No, but let's put that aside. I'm talking about comparing the two combinations. Your Honor. If you compare the Moses study with the Defonso study and the Garber reference, does that not show that the prior art was more effective than the repaglinide-metformin combination? It does not, Your Honor. That chart that CARACO has, DX394, they showed it to one witness at trial who testified that it was observed, because it simply takes studies of different patient populations in different parameters and puts them on the same chart. What the chart does not show is the additive effects. Let's take Garber, for example. Garber shows a 70 mg per deciliter reduction from the metformin and a 70 mg per deciliter reduction from the sulfonylurea. That's 140 additive. That's exactly the same as Defonso said. Defonso teaches very clearly that you have an additive result, 16553 in the record is the citation for that. You're comparing different things. What I find, and you tell me if I'm wrong, is that the Moses study shows a decline of 2.18 for the alleged invention, and then the prior art combinations show 3.5 in the Defonso study, a decline of 3.7 in the Garber study. Are my numbers wrong? Your numbers are not wrong, Your Honor. What you're missing is what goes into those bars. Those are additive results. In other words, the sulfonylurea itself is contributing half of that result. What is unexpected here was that the repaglinide was known in the prior art to have… to one aspect of the compound, but you agree that when you compare the two combinations, that the result of your supposed invention is in fact less than the prior art. Absolutely not, Your Honor. There is no comparison between those two. You may not like the comparison, but if you make the comparison, it shows what I said it says, right? Your Honor, the absolute results are true, but what is missing is the additive effect. This is a combination therapy, and what they showed is 70 plus 70 equals 140. What the prior art showed us to repaglinide was 0. 1 plus 0 equals 1. It would have no additive effect over and above the effect of metformin alone, and what the Moses study showed is 1 plus 0 equals 8. It was extraordinary, unheard of, surprising, stunning. That was the testimony of witness after witness, because those exact same studies… I understand what you're saying. What is your basis for suggesting that the examiner here made the, quote, finding, which somehow carries over from the examination to this infringement litigation? I'm not aware of any authority that in the course of an initial examination that the examiner makes findings which are somehow binding in later litigation. What's the support for that? Your Honor, the examiner initially rejected the invention as obvious over meander. Legal support. Legal support, Your Honor, is Zerko and the Hyatt case and KSR and all of the cases that say that when a district court examines the record, it must examine the record actually before the agency. What the district court did here, for example… But none of those cases say that there's deference to a finding. We have not asked for deference to the finding, Your Honor. We have asked that the finding be given evidentiary value and the underlying data… What case says that the finding, as opposed to the record, is entitled to evidentiary value? Your Honor, the Hyatt v. Kapos case says that. Says that? Yes, Your Honor, and the record… Hyatt was not dealing with an infringement case and a prior, quote, finding by the examiner. Your Honor, and the underlying data, more importantly, on which the examiner's conclusion was based included the Wolfenbutel reference, which the district court did not even mention. It was testified about 60 times at trial. It's the only prior art that quantified the results of her Paglenite, one of the two compounds at issue, and the district court didn't even mention it because it is entirely inconsistent with the conclusion reached by the district court. There is no way that Carrico can carry its burden in light of the Wolfenbutel reference, and the district court's failure to consider the most probative evidence is clearly… Well, you say it's most probative, but it's not a study of the combination, of any combination. It's a study of one of the two components of the combination, Your Honor, and this court has made clear in many cases, including the Pozen case most recently, that where a combination therapy is claimed, the monotherapy test must be considered in determining unexpected results. That is black-letter law that goes back to Papesh and O'Farrell. That is the way a combination is established. The way that the unexpectedness is, take the two compounds in monotherapy, look at what we would expect them to do, and if the combination result is different, as it clearly was here, as it indisputably was here, Carrico's expert agrees that this would have been an unexpected result, Your Honor, in light of that evidence. You can't ignore the evidence of one of the two compounds in monotherapy. That is error. You can't ignore the evidence of the earlier combination compared to the later one. And they didn't, Your Honor. When you asked about head-to-head comparison, Dr. Achille testified that the closest prior art was diffranzo. Diffranzo clearly shows additive combinations, and the head-to-head comparison, the scientifically head-to-head comparison, was made in the Anjinomoto opposition. This was all testified about at trial, which was submitted to the examiner, and she decided that it was still unexpected over that combination. It is not the absolute level of reduction. Too much reduction is harmful to a patient, Your Honor. If you make the blood sugar crash, you're going to kill the patient. You need to moderate it and get the right result, and here what we have are two drugs acting in an unusual way. We also have what has been obscured here, I think. Mr. Perry, let me interrupt you just because the clock is running, and I'd like to reach a different issue. I mean, one of your lead arguments is this argument with regard to in-ray cyclopentadiene and this burden-shifting matter. And I'm just not clear on what the argument is. It seems to me, so you can tell me why I'm wrong, the district court did precisely what is consistent with all of our case law and the way he should have operated with regard to his analysis of obviousness. So what's the problem with what he did with regard to burden-shifting? Your Honor, the obvious-to-try framework grew up in the prosecution context where after an initial rejection on the basis of obvious-to-try, the applicant has the burden of showing unexpected results. Translated over into district court litigation, however, that does not mean that once the challenger has shown obvious-to-try that the patentee has to reprove unexpected results. That is inconsistent with the presumption of validity and KSR and the old case of United States v. Adams that the court adopted in KSR. You may be right about that. I don't see that the district court did that at all. He clearly put the burden on the patentee. If there was any burden-shifting, it was simply for burden of production and not persuasion. He didn't conclude as happened in Urand or one of these cases, whatever, where the conclusion of obviousness was made, the ultimate conclusion, before secondary considerations were considered. It seems to me he did precisely what he should do. So what was wrong with this analytical framework? What he did, Your Honor, is exactly what the court did in Cyclobenzaprine, which was to conclude on the basis of obvious-to-try plus an expectation of success that the patent was obvious. And Cyclobenzaprine makes clear that that is not enough, that the burden is on the challenger to show not just success. So was there any burden of production with regard to the infringer here? I'm sorry, with regard to the patentee here on secondary considerations? Well, first, unexpected result is not a secondary consideration. But second, we discharged that burden of production by putting forth the record that was before the examiner and then persuaded the examiner, as a factual matter, that these results were unexpected. It then became Carrico's burden to show that a reasonable artisan would have expected these results, the magnitude of results actually observed in this study. That was their burden, and they never showed that, Your Honor. In fact, they don't even... Where did he switch the burden of proof? Your Honor... He stated the correct burden of proof. He never suggested that the burden of proof was on you. Your Honor, I disagree with that fundamentally. He said, quote, The prima facie case has not been overcome by Novo's attempt to prove unexpected results. That's at page 861. He said the same thing at page 859. He said over and over again that Novo... He said the burden of proof remained on the Houston fringes. Your Honor, he... And he also found that the combination was expected and explainable in light of the state of the art, and that was the burden on the other side. And, Your Honor, he didn't say that. He said it should have been expected successful results and perhaps synergistic. That's at page 850, which is not clear and convincing evidence of actual expectation that this magnitude would have been assessed, and their expert testified it was not. Well, you seem to take issue in your brief with the fact that he used the word either overcome or rebut. Isn't that a word that appears all the time in the cases, in the district court cases, which we affirm and in our opinions? It does, Your Honor, and this court in the cyclobenzaprine tried to set the record straight by making clear that in a challenge as opposed to a prosecution context, it's always the challenging person. Well, wait a minute. Those are patentable opinions, so they couldn't overrule existing precedent, right? That's correct, Your Honor, and the burden... So what did they do, in your view, to the notion of overcome or rebut that appears in these cases? It is never the patentee's burden to overcome or rebut the prima facie case. That's what KSR holds, which is a Supreme Court opinion, which is to control... Well, KSR uses a different term. It doesn't use the term overcome. It uses the term dislodge. Is there, in your view, then, a world of difference between the word dislodge and the word overcome? Your Honor, our view is it is never the patentee's burden to disprove any aspect of the awarding challenge. Well, that's not the answer to my question, though. Is there a difference... KSR uses the word overcome, right? It does not, Your Honor. I'm sorry, dislodge. Dislodge, but it cites USA v. Adams, where it was the patentee's order, and, of course, I4I, the most recent Supreme Court pronouncement on this, makes clear that it is the patent challenger's burden in all respects. I would like to reserve the remainder of my time. Okay, thank you, Mr. Barrett. Mr. Hurst. May it please the Court, Jim Hurst, on behalf of CARICO. Even if everything Mr. Perry just argued about unexpected results were correct, and I'll address his arguments in a second, there is one very simple reason why there must be an affirmance in this case, and it's this reason. Unexpected results, to be legally sufficient, have to be reasonably commensurate with the scope of the claims. Let me ask. I gather you don't dispute that synergism was shown by the data, the entirety of the data. No, I do dispute that. In fact, all the experts below agree that there was no statistical significant proof of synergy for this combination. I don't think that's quite a fair statement. The difference between 95% confidence and 94% is not the difference between night and day, or black or white. Well, I think that statisticians generally agree that you have to have 95% confidence. That's a general term. 94% confidence does not disprove any relationship. Let me say it a different way. You're talking about the rat study? No, I'm trying to understand what you just said about synergism, because my impression of the data, a fair view of your argument, is that you accept what I think is very clear from the data, that there is more than an additive result, and that your position is that that's not unexpected because of other instances of synergism of other compounds. There may have been a suggestion of synergistic... The answer is yes. Of course, there's synergistic results. The combination of rapagmod and metformin does something the two of them acting alone don't do. Your Honor, there's two studies. Why are you fighting that? There's a human study that... Isn't that true? I mean, putting the two of them together... It's possible. ...the record establishes it. What are you arguing? Well, it's just an unimportant point. There was a rat study where they actually did a correct study. I don't know why you're fighting this. I really don't. If you're a case juror, on whether there is or isn't synergism, I think you might as well sit down. It doesn't turn on that. There could have been synergy, and it was expected by the prior art because it was taught. The point is to compare the rapagmod-metformin combination to the prior art. That's the heart of the issue here. And there was no showing that this particular combination was any better than the prior art combination. There was no showing at all in that. Because of the 94% correlation other than at the 2-hour measurement when it was 98%. So you're saying that doesn't count? The rat study did not establish synergy, even in rats, much less humans. In the rat study, they failed. Your position is that synergism was not shown. Absolutely not. Not by the rat study. On the contrary, they set out a goal to try to establish synergy by looking at area under the curve. And they failed. And then they cherry-picked the 2-hour mark. So the case depends on that there's no synergism? No, not at all. I mean, there's so many... No, not at all what? That your case doesn't depend on it? My case does not depend on proving the absence of synergy. Because this combination is obvious regardless of how somebody views the synergy issue. But just to get to my first point, unexpected results have to be reasonably commensurate with the scope of the claims. The district court here held as follows, the scope of claim 4 substantially exceeds the scope of the evidence of alleged unexpected results. And it went on. And the record clearly and convincingly precludes extending the probative value of those results beyond the small type 2 diabetes patient subpopulation that experienced them. Their experts said their evidence of unexpected results was limited to 25% of the claimed patient population. That leaves unaddressed, with unexpected results, 75% of the scope of the claims. There has been no response from Novo on that definitive point. Why don't you put that point aside and worry about the heart of the case instead? Well, the heart of the case is this. Just to step back and look at the big picture for 30 seconds, literally for 50 years, article after article taught, combining metformin with secretagogues, because they have different mechanisms of action and therefore attack the disease from different directions, to achieve an additive or even synergistic result. That's what the prior art taught. Who has the burden to show unexpected or expected results? I mean, you've got to show a prognostication case of obviousness. So that means you have to show, right, that the results were expected? Yes. So what is the burden on the other side? What is the nature of the burden on the other side? They have the burden of production to show legally sufficient, unexpected results, but the burden of persuasion overall, on clear and convincing evidence, always remains with the challenger, always remains with us, and we accepted that burden. And you think you established that the district court found that the results were expected based on all the prior art that you came forward with. Is that correct? Absolutely, Your Honor. In fact, Mr. Perry, to correct one of Mr. Perry's statements, you asked whether the district court had found by clear and convincing evidence that the results were expected and explainable, page 61. This is a quote from the district court. This was the finding. Clear and convincing evidence. That's our evidence. We carry the burden. Clear and convincing evidence establishes that the results of the claim combination therapy said by Novo to be unexpected and unexplainable were, to the contrary, expected and explainable in light of the state of the art as of the critical date. So the district court found, by clear and convincing evidence, that the results they claimed were unexpected were both expected and explainable. And that finding was certainly not clear error because there was a wealth of prior art that taught these two combinations could give you synergy under certain circumstances. That he discussed in some detail. In 21 pages of detail. Yes. Yes, Your Honor. If they were expected, why did they have to conduct these tests? Well, you always have to... You just say, This will cure the incurable type 2 diabetes. Well, you always have to... I mean, for any new drug, regardless of what you expect, you have to establish to the FDA's satisfaction that your drug actually works. So they had to actually conduct the tests, but the prior art taught you that when you combine these two different kinds of drugs, you're going to achieve even a synergistic result. Five different prior art articles taught... So if they're so expected, why did they have to go through all these expensive clinical trials if it's so clear? Well, I mean, you always have to do the test to prove it up, of course, but... Why do you have to prove it if it's known, if it's predicted, obvious, without any possibility of error? Well, nobody's saying there's no possibility things could go wrong. That's why the FDA requires clinical studies to ensure that drugs are safe and effective. But the prior art taught you this was expected to be a combination that would produce synergistic results. That's what the prior art taught. And so what's... So are we talking about... I mean, the claim is not specific. Are we talking about a particular level of synergy then? I mean, is it the case that the examiner didn't allow it because the prior art taught a small level of synergy and now they came forward with a draft study and said, no, this is a high level of synergy? Are we just talking about degree? Well, the claim, of course, is just the combination of the drugs. So synergy's not even mentioned in the claims. But neither the prior art nor the evidence of trial quantified synergy in humans. Couldn't be done. There's no evidence at all in the record that the combination of ropagamide and metformin was better than the prior art. In fact, you're right. In fact, a NovoFinance paper... This is reported by the district court. A NovoFinance paper compares all the prior art studies, including the two that you mentioned, and Moses, DeFranco, Malander, and Moses, and came to this conclusion. This was a NovoFinance article. The combinations were comparable in terms of efficacy parameters. So there's no evidence that the claimed combination was in any way better than the prior art. How do we know? We were told, and it's certainly logical, that conducting a test of these untreatable diabetics using a placebo would be unethical. Therefore, they had the components alone and together. And I think, despite what you say, that even with a 94% probability, some more than additive effect was shown. However, the rat study filled the gap. As I recall, they used a placebo with the rat study. That's true. So why is that not... It's not at all unusual from what we see that new drugs and new combinations are tested on experimental animals. You say that can't be done in this case? Nobody's saying it can't be done. All we're saying is that the mere suggestion of synergy is not statistical proof of synergy. There are numbers. There are graphs. There's no numbers associated, no synergy numbers associated with human trial because they didn't run that kind of study. So they don't have any evidence that it's synergistic in humans. And even in rats, they had to cherry-pick one data point because the overall error end of the curve was a failure. So if our scientific view of the data, which shows more than an additive result, is that this is what synergism is all about, again, I asked you in the beginning, is that your argument? Is that the end of your case? Not at all. That result, synergistic results were expected, number one. Number two, whatever synergy was available for this combination wasn't superior to the prior art. That's the relevant comparison. Number three, they're only talking about 25% of the full scope of the claim. As a matter of law, that is insufficient. But as I recall, the trial judge said that it was obvious to try this combination. I don't hear you saying that. I hear you saying that they did try it and it didn't show what they say it shows. No, it was. Not only was it obvious to try, but the district court found that it was also, the previous case was satisfied by the teaching motivation suggestion test as well. And there's no dispute that the prima facie case was established here. How could it be otherwise? All they did was follow the recipe to combine these two different kinds of drugs. And diabetes docs have been doing that for 50 years. Let me just spend... There's no recipe that is specific that names these two drugs. If they put them together, they have a synergistic effect. Isn't that right? I don't think... You're generalizing because there is an overall experience of synergism. I think this is what the district court did. Perhaps that was fair. Yeah, metformin plus this category of drugs repaglinide was one of them. Not this category. The other category, the sulfonyl... Well, sulfonylureas are... Some Orlando article suggested putting together repaglinide with metformin. And so did Rockman. So did their expert, Garber. That's why they're not up here arguing otherwise. Because it was so richly established that the art told you to put these two drugs together. Inequitable conduct, very briefly. Novo's lead argument on inequitable conduct is that the district court failed to apply the Theracense standard. But that's exactly what the district court applied. The but-for-materiality standard. The single most reasonable inference for intent. Let me ask you about inequitable conduct. The practical matter. And you're pursuing that even if you prevail on the obviousness issue. Because... why? If we prevail on the obviousness issue, then for this particular dispute, on this particular drug, my client wouldn't have an interest in the inequitable conduct issue because we need only win on one of those two defenses. So it only rests... we don't have to decide inequitable conduct... I mean, normally there's a reason for inequitable conduct, either because it's broader or because it gives someone the rights or the ability to go get attorney's fees. But you're saying you're only presenting it to us as an alternative? I am. That's true, Your Honor. But my main point here on Theracense is he knew Theracense was up before this court and he applied the exact standard this court adopted. But for materiality. Single, most reasonable inference. Separately looking at materiality intent. So what's left? Novo has to show that there was clear error in his factual findings. And that standard's a tough standard to meet. You have to show that his findings of deceptive intent but for materiality were not even plausible based on the record. And that's not a standard that Novo can meet in this case. In fact, the way they argue it in their briefs, they never identify particular factual findings as clear error. They argue it as if it's a de novo review by this court where they're re-arguing all the facts. The district court was there for three weeks, listened to the witnesses, listened to the evidence, and came to the conclusion that there was deceptive intent. What's the material omission? The material omission is, there was a number of them. What you can see here is Dr. Sturrus said this to the folks internally at Novo. At the same time he submitted his affidavit to the patent office saying, now we have clear evidence of synergy. Here's what he said. I don't think he used the term clear evidence of synergy. Strongly suggested synergy is his words, and Bork said we have now clear evidence of synergy. Here's what Dr. Sturrus said. Not possible to assess whether repaglinized metformin combination is additive, synergistic, or antagonistic. You're doing the same thing you're accusing them of because as a result of that he proceeded with the rat study. He said this, Your Honor, after he had the rat study. This was his conclusion internally. He said highly likely. That's what he said to the patent office. Scientists never say yes or no. Here's what he said internally to other scientists. He said the data may be said to be suggestive of synergy. That's materially different from what he said to the patent office. He made stronger statements than that after the rat study. This was after the rat study. He said he made stronger statements than what you're quoting. To the patent office, but internally he didn't say that. He was more candid internally. If this was before the patent office, his opinion, they never would have gotten this patent. Four rejections in a row. Due in part to a lack of sufficient evidence of synergy. And that's how they finally get over the top. And here's what he says. Not possible to assess whether it's additive, synergistic, or antagonistic. If there's no synergy, why is your client so concerned about this patent? Because we're being accused of infringement. The basic patent is expired on the principal component. Just sell it. We're being accused of infringement. Explain that. Because as I understand it, as a result of the earlier case, the result here is that the use code has been corrected in the orange book. And that means that with a label carve-out, you can now sell repaginide, right? We have so far no, because so far the FDA has not approved our carved-out label. We got a corrected use code. Why is that? Why have they not approved? There are a variety of issues that are going on between the FDA and CARICO. We're hopeful that it will be approved soon, but at this point it has not yet been approved. But if it is approved, why are you concerned about a patent? Because you don't want to do the carve-out? Well, there's one thing. Eliminating the carve-out might be something my client decides to do, number one. But number two, once we get onto the market, there's still an argument of inducement to infringe. So we still have an interest in invalidating this claim, because we don't want to have any— Well, if there's no synergy, if there's no value, why would you induce? Just forget about it. Because it's actually prescribed. There's a small percentage of docs out there that prescribe the combination. It's comparable to the prior art. So every so often, doctors prescribe the combination in small amounts. Because the record says it has strong advantages for the difficult-to-treat type 2 diabetes. That's not what the record says, not compared to the prior art. It's not as efficacious as the prior art combination. That was what the Australian study said. Wasn't that the purpose of the Australian study? It was why they didn't use a placebo, as I recall, because these were seriously ill patients. It's unethical when people have diabetes to give them a placebo. So that's why they didn't do the placebo. And as a result, they couldn't actually conduct any statistical analysis of synergy. And that's why they thought maybe it's suggestive of synergy, which is exactly what the prior art showed for the other prior art compounds. Same thing. It came with the same results as the prior art. Can I ask Judge Dyke's question about why we're here and what's going on? Is part of that the distinction between a paragraph 7 and a paragraph 8 and a paragraph 4 approval and have to do with anything about the exclusivity period for your client? No, we get the exclusivity period. Even though we carved out for this particular claim, because we are a paragraph 4 filer for the other claims, and that's what gives us the first filer status. We will have the first filer status regardless of whether we carve out or we don't carve out. If there's no further questions, thank you, Your Honors. Thank you, Mr. Hurst. Mr. Perry, we've run over. Would you enlarge Mr. Perry's side by the amount we've run over? My friend, Mr. Hurst, agreed that Carrico had to show that the results were expected. He collects all the evidence in that effect on pages 13 and 14 of his brief. There is no study in the prior art that showed a greater than additive effect for any combination. That is undisputed. The Moses study, the Australian study, showed a greater than additive effect for this combination. That is undisputed. The Ratt study confirmed the statistical significance because, as Mr. Hurst just acknowledged, it would have been unethical. The problem, Mr. Perry, is that the two of you are comparing two different things. What you want to compare is the additive effect of repaginamide in metformin, the additive consequence, compared to giving it as a combination therapy. What they are comparing is the combination therapy of repaginamide and metformin together with the prior art combination of sulfitamide and metformin. That is basically what is going on here, right? Almost, Your Honor. What they want to compare is the total results, not the component results. We want to compare the inventive combination to the closest prior art, which the law is very clear on unexpected results. You have to compare the invention. Can you say you want to compare it to the two compounds, their effect in the prior art considered individually rather than combined? No, Your Honor. Either considered individually. We clearly win there. Or if we compare it to the closest combination, the metformin-sulfonamide-urea combination studied by DeFranco, which their expert, Dr. Achilles, said is the closest prior art, it too shows only additive results. And the key here, Your Honor, is— No, no, no. No, no, Your Honor. Wait, wait. No, do not interrupt. I very much apologize. The DeFranco study shows that the prior art was more effective than the repaginamide-metformin combination. If you just compare those two things, that is correct. That is not correct, Your Honor. It shows a greater drop in blood glucose levels. That doesn't mean more effective. This drug has huge advantages. For example, you can take this drug with meals. You can't take the sulfonamide-ureas with meals. You can take this drug multiple times a day. Those drugs you can't. You can only take one a day. In terms of glucose reduction— In terms of glucose reduction, Your Honor, you do not want maximal drop. You will kill the patient. No, no, no. Just answer my question. In terms of glucose reduction, the repaginamide-metformin combination is less effective than DeFranco showed the prior art combination. I 100% disagree. DeFranco showed you add. In Garber's language, 70 plus 70. Forget about adding. Just the results of the two combinations. Your Honor, with all respect, you can't forget about adding. You're not answering my question. I am trying to answer your question. You want to talk about other things. I understand why you want to talk about other things. Other things may be relevant, but I'm trying to focus you on making a comparison between the prior art combination and this combination in terms of glucose reduction. In terms of glucose reduction, that combination in the prior art was more effective. No, Your Honor, and that is shown very clearly in the Angiomoto opposition, which was submitted to the examiner and detailed in extremely complicated— all the tables, all the charts are all there explaining exactly the comparison. We cross-examined Dr. Achille on that, and he agreed with that. So that was done at trial, Your Honor, and that doesn't appear anywhere in Judge Cohen's opinion for a very good reason, because there is no evidence that that comparison holds true. Because when you correct for the different populations, the different study periods, the different dosages and so forth, when you take out the apples to oranges problem, the comparison doesn't hold. And that is why you have to look at what was known in the prior art. In the prior art, there was no evidence other than this additive effect. And Mr. Hearst said over and over again the prior art taught synergism. There are five articles he cites for that, and they all use the word synergy, which Dr. Achille said was mushy, to mean not antagonistic. Synergy in biochemistry does not always mean greater than additive. Every dictionary will tell you that. And Dr. Garber, the author of those three articles, sat on the stand and testified that he meant not antagonistic. And this is an obviousness case, Your Honor. It was their burden to show that the magnitude was expected. There was no greater than additive prior art. There is not to this day. There is no compound, no combination that works anything like this. This has been a tremendously successful product. You know, a few times prescribed. It's a hundreds of millions of dollars product. They want to copy it precisely because it is so good for some patients, with type 2 diabetics, it has improved their lives dramatically. It was a breakthrough invention, a breakthrough combination, and the patent office allowed it for that reason. This challenge is not within the zone of what this court allows for obviousness, in part because of the reversal of the burden of proof, but in part because the prior art isn't there. It's a hindsight bias. Today, Your Honors, metformin is the most popular oral anti-diabetic agent. At the time, it had only just been approved in the United States. Today, repaglinide is well known to every diabetes practitioner. At the time, it had just been characterized and had never been approved in any country for any use. So all that's going on here is a bunch of hindsight, 20-20 reflection that we know today this is a powerful, popular, successful, clinically useful treatment. At the time, Dr. Rachman, the only other study of repaglinide, questioned whether it had any clinical benefit whatsoever. The Australian researchers said we shouldn't even test fasting plasma glucose because we know this drug has no effect on that. So we have skepticism from eschers, we have commercial success, we have unexpected results, we have the finding of the examiner, and against all that, we have nothing. We have no evidence of obviousness. This is a problem, this judgment. It needs to be reversed. And Judge Prost... Thank you, Your Honor. Do you need an answer? No. I think we're okay with this case. It's taken under submission. But let's proceed to the next case in this series, 2012.